# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH TONY BADEAUX** | **CIVIL ACTION NO. 04-2287** |
| **VS.** | **SECTION P** |
| **WARDEN J. M. LeBLANC** | **MAGISTRATE JUDGE HILL BY CONSENT OF THE PARTIES** |

## REASONS FOR JUDGMENT

Before the court is a petition for writ of *habeas corpus* filed on November 8, 2004 by *pro se* petitioner Joseph Tony Badeaux pursuant to 28 U.S.C. §2254. Petitioner is incarcerated at the Elayn Hunt Correction Center in St. Gabriel, Louisiana, where he is serving concurrent sentences totaling sixty years imposed for convictions of armed robbery and conspiracy to commit armed robbery entered in the 27th Judicial District Court for St. Landry Parish.

## PROCEDURAL HISTORY

By Bill of Information dated December 16, 1999, petitioner, Jeremy Thomas and Keith Gallow were charged with conspiracy to commit armed robbery and the October 12, 1999 armed robbery of Bank One in Sunset, Louisiana. Petitioner's co-defendants allegedly entered into plea agreements with the State.[1] Gallow testified against petitioner

---

[1]Petitioner alleges that Thomas agreed to testify against petitioner in exchange for a fifteen (15) year sentence. However, Thomas did not testify against petitioner and there is no evidence in the record as to what sentence he recieved.

at his trial to avoid multiple billing by the State and an agreement that his sentences would run concurrently. [tr. pg. 550, 571-572, 590].

On April 24, 2001, petitioner was convicted of armed robbery and conspiracy to commit armed robbery following trial by jury in the 27th Judicial District Court. He was sentenced to serve concurrent hard labor prison terms of 60 and 49 years, respectively.

Petitioner's convictions were affirmed on direct appeal by the Louisiana Third Circuit Court of Appeals on April 3, 2002. On direct appeal, petitioner claims to have argued two assignments of error, neither of which is asserted herein: (1) that the trial court erred when it failed to grant petitioner's motion to suppress evidence; and (2) that petitioner's sentences were unconstitutionally excessive. It does not appear that petitioner sought further direct review of his convictions in the Louisiana Supreme Court.[2]

On March 17, 2003, petitioner filed an Application for Post Conviction Relief in the 27th Judicial District Court. Petitioner argued six claims for relief: (1) That there was insufficient evidence to support petitioner's convictions; (2) The trial judge erred when he failed to recuse himself after becoming a material witness in the case because the judge accepted plea agreements from petitioner's co-defendant's, Gallow and Thomas, who later testified against petitioner at his trial; (3) The trial judge erred when he failed to recuse himself because the judge is a relative of the defendant "in two different ways";

---

[2] This court's research reveals only one Supreme Court case involving the petitioner, *State ex rel. Joseph T. Badeaux v. State*, No. 2003-2760 (La. 10/8/2004), 883 So.2d 1030. This citation refers to the Louisiana Supreme Court's writ denial following petitioner's unsuccessful state collateral attack.

(4) that the prosecution of the defendant on charges of armed robbery and conspiracy to commit armed robbery violated the prohibition against double jeopardy; (5) that he received ineffective assistance of counsel because counsel failed to move to recuse the trial judge and failed to move to recuse himself due to a conflict of interest because he allegedly previously represented the bank which petitioner was accused of robbing; and (6) that the cumulative effect of all errors alleged denied him due process. The trial court denied petitioner's Application for Post-Conviction Relief by ruling dated April 10, 2003.

Petitioner apparently attempted to appeal the trial court's denial of his application for post-conviction relief. On August 29, 2003, the Louisiana Third Circuit Court of Appeals construed petitioner's filing as a request for supervisory writs and consolidated the appeal docket number with a supervisory writ docket number. *State v. Joseph Tony Badeaux*, No. KA-03-892 (La. App. 3d Cir. 8/29/2003. Petitioner's request for supervisory review was denied by the Louisiana Third Circuit Court of Appeals on September 12, 2003, finding "no error in the trial court's ruling." *State v. Joseph T. Badeaux*, Nos. KH-03-00848 and KH-03-00892 (La. App. 3d Cir. 9/12/2003). On October 8, 2004, the Louisiana Supreme Court denied petitioner's request for writs without comment. *State ex rel. Joseph T. Badeaux v. State*, No. 2003-2760 (La. 10/8/2004), 883 So.2d 1030.

The instant federal *habeas* petition was signed by petitioner on October 30, 2004, and received and filed in this court on November 8, 2004. Petitioner asserts the same

claims that he raised in his state post-conviction proceedings: (1) That there was insufficient evidence to support petitioner's convictions; (2) The trial judge erred when he failed to recuse himself after becoming a material witness in the case because the judge accepted plea agreements from petitioner's co-defendant's, Gallow and Thomas, who later testified against petitioner at his trial, thus denying petitioner his right to an impartial tribunal; (3) The trial judge erred when he failed to recuse himself because the judge is a relative of the defendant in "in two different ways, 3[rd] or 4[th] degree", thus denying petitioner his right to an impartial tribunal; (4) that the prosecution of the defendant on charges of armed robbery and conspiracy to commit armed robbery violated the prohibition against double jeopardy; (5) that he received ineffective assistance of counsel because counsel failed to move to recuse the trial judge and failed to move to recuse himself due to a conflict of interest because he allegedly represented the bank which petitioner was accused of robbing; and (6) that the cumulative effect of all errors alleged denied him due process.

The State has filed an Answer and Memorandum in Opposition to federal *habeas corpus* relief [rec. doc. 8]. Petitioner has filed a Reply. [rec. doc. 14]. In response to petitioner's Reply, the State filed a Motion for Correction requesting that certain erroneous information be stricken from its response. [rec. doc. 15]. That Motion was granted and accordingly, the statement regarding two guns having been found on the floorboard of the car, appearing on page four of the State's Memorandum in Opposition

was stricken from the record. [rec. doc. 16]. The parties consented to this court's jurisdiction being exercised by the undersigned. [rec. doc. 13]. This Ruling follows.

*Standard of Review*

This *habeas* petition was filed on December 28, 2001; therefore the standard of review is set forth in 28 U.S.C. §2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[3] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) citing *Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[4] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. §2254(d) as amended, states as follows:

**(d)** An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with

---

[3]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief ...exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[4]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein. Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of §2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. §2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 citing *Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).  Under §2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and "correct" error in state court proceedings, but must exercise a more limited review . . ."  *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court.  *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) citing *Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 citing *Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of...[the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt ,* 230 F.3d at 740 citing *Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 citing *Williams,* 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 citing *Williams,* 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...[r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing

evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* citing 28 U.S.C. §2254(d)(2); *Knox,* 224 F.3d at 476 citing *Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000).

## LAW AND ANALYSIS

**1. Sufficiency of the Evidence**

Petitioner argues that there was insufficient evidence to support his convictions because no one positively identified him as a person who robbed Bank One in Sunset. He complains that his co-defendant, Keith Gallow, whose uncontradicted testimony places Badeaux at the scene as the getaway car driver and as identifies Badeaux as the person who devised and implemented the plan to rob the bank, committed perjury in order to receive favorable consideration at his sentencing. Petitioner also complains that eyewitness Nida Arceneaux's testimony was suspect because in her written statement to police she did not identify the type of vehicle she saw the three men enter after they fled the bank, yet at trial she was able to identify the type of vehicle she saw parked on the side of the road. Petitioner speculates that this was due to coercion by the District Attorney.

A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61

L.Ed.2d 560 (1979). When a defendant seeking federal *habeas* relief contends that the evidence is insufficient to support a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991), quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The court applies this standard with explicit reference to the substantive elements of the criminal offense as defined by state law, *Jackson*, 443 U.S. at 323 n.16, 99 S.Ct. at 2792 n.16, and the court "gives great weight to the state court's determination." *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987) (Louisiana Supreme Court's review of evidence for sufficiency to prove guilt "entitled to great weight in a federal *habeas* review"). Either direct or circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990), citing *Jackson*, 443 U.S. at 319, 324-25, 99 S.Ct. at 2789, 2792; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*). The fact that most of the evidence against a defendant was circumstantial does not change the standard of review. *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991), citing *United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989).

Moreover, contrary to Badeaux's position, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the

witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 citing *United States v. Greenwood*, 974 F.2d 1449,1458 (5th Cir. 1992). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005) citing *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999). Accordingly, "whether judges doubt the credibility of a witness, even an accomplice witness cooperating with the government, is beside the point...." *Greenwood*, 974 F.2d at 1458.

The state district court on petitioner's state *habeas* claim found that the evidence was sufficient to support petitioner's convictions. In reaching this conclusion, the court applied the standard set forth by the United States Supreme Court in *Jackson v. Virginia* (albeit without citing the case)[5] and expressly found that "[i]t is clear after a thorough review of the record and the trial transcript that the sufficiency of the evidence, viewed in a light most favorable to the state...that a rational juror could have found the defendant guilty beyond a reasonable doubt. The mass of circumstantial evidence coupled with the direct evidence presented indicates to this court that the jury was rational in its decision and, as such, its verdict cannot be set aside." For the reasons set forth below, the state court decision was not contrary to nor an unreasonable application of federal law, nor was

---

[5]The Jackson standard is legislatively embodied in Louisiana Code of Criminal Procedure article 821. See *Hampton*, 865 So.2d at 290. The trial court cited this article in its reasons for ruling.

the decision an unreasonable determination of the facts in light of the state court record. Accordingly, Badeaux is not entitled to federal *habeas* relief with respect to this claim.

All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24; *State v. Hampton*, 865 So.2d 284, 291 (La.App. 2nd Cir. 2004).

Louisiana law requires the following elements be proved to support a conviction for armed robbery: that there was (1) a taking, (2) of anything of value, (3) from the person of or in the immediate control of another, (4) by use of force or intimidation, (5) while armed with a dangerous weapon. La. R.S. 14:64; *Id.; State v. Collins,* 910 So.2d 454, 457-458 (La. App. 5th Cir. 2005). Under Louisiana law, armed robbery is a general intent crime, and hence, specific intent is not an element of the offense.[6] *State v. Bowers,* 909 So.2d 1038, 1045 (La. App. 2d Cir. 2005); *State v. Magee*, --So.2d--, 2005 WL 2464684, *3 (La. App. 5th Cir. 2005); *State v. Tolliver*, 818 So.2d 310, 315 (La. App. 2nd Cir. 2002); *State v. Doucet*, 638 So.2d 246, 248-249 (La.App. 3rd Cir. 1994); *State v. Gordon*, 504 So.2d 1135, 1142 at fn.4 (La.App. 5th Cir. 1987); *State v. Hebert*, 688 So.2d 612, 617(La.App.2nd Cir. 1997); *State v. Payne*, 540 So.2d 520, 523-524 (La.App.1st Cir. 1989); *State v. Taylor*, 802 So.2d 779, 783 (La.App. 5th Cir. 2001).

---

[6]Prior to Acts 1983, No. 70, Subsection 1, proof of specific intent was an element of armed robbery. See *State v. Johnson*, 368 So.2d 719, 721-722 (La. 1979). However, the 1983 Act redefined armed robbery by substituting "theft" with "taking of". Accordingly, since the effective date of the Act, August 30, 1983, Louisiana courts have consistently held that this change removed the element of specific intent from the offense. Accordingly, proof of general intent satisfies the intent requirement for the crime. See *Payne*, 540 So.2d at 524 fn.1; *Gordon*, 504 So.2d at 1142 fn. 4.

The elements of the crime of conspiracy are (1) an agreement or combination of two or more persons for the specific purpose of committing a crime and (2) an act done in furtherance of the object of the agreement or combination. La. R.S. 14:26; *Hampton*, 865 So.2d at 291citing *State v. Valrie*, 749 So.2d 11 (La.App. 3 Cir. 10/13/99). Moreover, specific intent is required to convict for conspiracy. *Hampton*, 865 So.2d at 290 citing *State v. Guillory*, 540 So.2d 1212, 1215 (La. App. 3rd Cir. 1989); *State v. Barton*, 857 So.2d 1189,1200 (La.App. 5th Cir. 2003). The "essence" of the crime is the agreement to commit a criminal act. *State v. Richards*, 426 So.2d 1314, 1317 (La. 1982). For purposes of the crime of conspiracy, specific intent may be inferred from the circumstances of the transaction and actions of the defendant. *Hampton*, 865 So.2d at 290 citing *State v. Johnson,*817 So.2d 120 (La.App. 3 Cir. 02/06/02) and *State v. Taylor,* 688 So.2d 1262, 1268 (La.App. 3 Cir. 02/05/97). The overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of the object of the agreement. *Id.*, *Richards*, 426 So.2d at 1317.

The evidence presented at trial, in the light most favorable to the State as required by article 821, Louisiana Code of Criminal Procedure, and *Jackson*, can be summarized as follows. A day or so before the bank robbery, Badeaux, whom Gallow had known since 1996, came to Gallow's house with Thomas. [tr. pg. 572, 551]. At that time, Badeaux proposed the idea of robbing the bank and three agreed to the plan. [tr. pg. 551, 554, 568]. The three then discussed their role in the robbery. Gallow would be the gunman, Thomas was to get the money and Badeaux was to drive the getaway vehicle. [tr. pg. 551-552].

On October 12, 1999, Badeaux and Thomas picked up Gallow in Gallow's Dodge Intrepid. [tr. pg. 552-553]. The three then drove to a gravel road to retrieve a truck which had previously been stolen. [tr. pg. 553, 556, 655-656, 672, 674]. Eyewitness Lagneaux confirmed, testifying that on the morning of the robbery he saw the three men standing by a car like Badeaux's on the side of the gravel road. [tr. pg. 655-659]. Badeaux supplied his co-perpetrators with clothes and rubber gloves, the clothes having previously been placed in the truck and the gloves having previously been placed in Badeaux's car. [tr. pg. 553, 555]. The three changed their clothes by the roadside, and wearing rubber gloves, proceeded in the truck to the bank, with Gallow at the wheel. [553, 555]. While Badeaux waited inside the truck, Gallow and Thomas entered the bank, robbed it at gunpoint and then returned to the truck. [tr. pg. 556, 558]. Badeaux drove the three to the location where they had left Badeaux's Intrepid. [tr. pg. 558-559, 539-540]. They again changed their clothes and took off the rubber gloves. [tr. pg. 560, 676]. The three then left in Badeaux's Intrepid, leaving the truck on the side of the road. [tr. pg. 560, 661]. Eyewitness Arceneaux confirmed some of these events, testifying that she saw three men leave the bank in a truck, change clothes and then enter an Intrepid that had been parked on the side of the road. [tr. pg. 537-540, 543-544]. Moreover, eyewitness Lagneaux testified that he observed the truck on the side of the road in the exact location where he had seen the three men by the car earlier that morning. [tr. pg. 661-662, 667-668].

While en route from the bank to the Intrepid, a dye pack in the bag of stolen money exploded. [tr. pg. 559]. Badeaux suggested that they get some rubbing alcohol to clean the stained money. [tr. pg. 561]. Therefore, the three went to a Piggly Wiggly in Lafayette. [tr. pg. 561, 563]. Thomas went into the store, and using money supplied by Badeaux, purchased rubbing alcohol, cigarettes and cigars. [tr. pg. 561, 563]. Badeaux then drove them to Heymann Park. [tr. pg. 564, 612]. On arrival at the park, Badeaux poured the alcohol in an ice chest in the trunk of his car, and while wearing rubber gloves, began to wash the money. [tr. pg. 564-565]. While Badeaux was washing the money, police officers, who had received a BOLO describing the vehicle and the suspects, approached. [tr. pg. 565, 602-605, 611, 613-615]. Badeaux took off the rubber gloves, placed them in his pocket and then closed the trunk of his car. [tr. pg. 565-566, 613-615, 617]. After observing these events, the police arrested all three suspects. [tr. pg. 566, 613-614]. A search of Badeaux's vehicle recovered red stained money in the amount taken from the bank, less three hundred dollars which was found in Gallow's possession. [tr. pg. 525-526, 566, 617, 682-683, 690-691, 709].

In light of the above, viewing the evidence in a light most favorable to the prosecution, the evidence presented at trial was more than sufficient to sustain both of petitioner's convictions. With respect to the conspiracy conviction, the evidence established that Badeaux conceived the plan to rob the bank, that Badeaux and his co-perpetrators agreed to implement that plan a day or so before the armed robbery took

14

place during a meeting at Gallow's house, and that Badeaux committed several acts in furtherance of the conspiracy, one of which was supplying the group with clothes and rubber gloves, both of which had been previously placed in the truck and Badeaux's car, respectively.

Moreover, the evidence at trial concerning Badeaux's role in the group's activities during the armed robbery is overwhelming, despite the lack of any non-participant eyewitness identification of Badeaux at the scene of the crime. Gallow undisputably named Badeaux as a participant in the armed robbery of the bank and placed Badeaux at the scene of the crime while fulfilling his role in the criminal plan as the getaway car driver. Although Badeaux challenges the veracity of that testimony, it is not the province of this court, on sufficiency of the evidence review, to make credibility determinations. See *Young, Garcia, Greenwood* and *Ramirez*, supra. Nor can this court find Gallow's testimony so incredible or insubstantial that, as a matter of law, it can be discounted. Gallow's testimony was corroborated by eyewitness accounts and the testimony of the investigating officers. Additionally, Badeaux was found by the police next to his car, the car described by eyewitnesses[7] and broadcast in the police BOLO, with two suspects, at

---

[7]Petitioner complains that eyewitness Nida Arceneaux's testimony that she saw three men exiting a truck that had left the bank and entering a Dodge Intrepid parked on the side of the road is suspect. However, at trial she unequivocally testified that the vehicle she saw on the road was an Intrepid and that she had told that information to Chief Padilla when he arrived at the scene. Her testimony was not impeached. [tr. pg. 539, 543-544]. Moreover, the fact that Arceneaux did not provide that amount of detail in her written statement to Detective Willis is of no import, as she had verbally provided that information to the Chief. [See tr. pg. 542]. Moreover, Arceneaux's description of the vehicle was corroborated by eyewitness Lagneaux, who gave police the same description of the vehicle parked on the side of the road. [See tr. pg. 656, 659, 663].

least one of which fit the description of one of the armed robbers. Finally, the police officers saw petitioner standing at the trunk of his car wearing rubber gloves washing red stained money, the amount of which matched the amount stolen from the bank. Considering the "great weight" afforded to the state court's determination and the above cited evidence, the undersigned finds that "any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt." Accordingly, this claim does not warrant *habeas* relief.

## 2. Double Jeopardy

Petitioner contends that his conviction on charges of armed robbery and conspiracy to commit armed robbery violated the constitutional prohibition against double jeopardy.

The Fifth Amendment to the United States Constitution contemplates three types of double jeopardy: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Gonzalez,* 76 F.3d 1339, 1343 (5th Cir. 1996) citing *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). With respect to the third scenario, at issue herein, the United States Supreme Court has set forth the so-called *Blockburger* test, to determine when the same act constitutes a violation of two distinct statutory provisions, thus permitting the imposition of cumulative punishment as occurred here. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932). In order to determine if the state can constitutionally charge two offenses or only one, the court must examine the elements of each offense and determine if each offense requires

proof of an additional fact that the other does not. *Id*. at 304, 52 S.Ct. at 182. The analysis focuses on the elements of the offenses charged, not on the evidence adduced at trial. *United States v. Payan*, 992 F.2d 1387, 1392 (5th Cir. 1993) citing *United States v. Cowart*, 595 F.2d 1023, 1029 (5th Cir. 1979), *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225 (1977) and *Iannelli v. United States*, 420 U.S. 770, 785 fn. 17, 95 S.Ct. 1284, 1294 fn. 17 (1975). If each offense requires proof of an additional fact which the other does not, then the *Blockburger* test is satisfied, "notwithstanding a substantial overlap in the proof offered to establish the crimes...." *Brown*, 432 U.S. at 165, 97 S.Ct. at 2226 quoting *Iannelli*, 420 U.S. at 785 fn. 17, 95 S.Ct. at 1294 fn. 17. In such cases, there are two offenses, and hence, no double jeopardy violation.

Under Louisiana law, armed robbery and conspiracy to commit a substantive offense such as armed robbery are separately defined crimes. La.R.S. 14:64 and La.R.S. 14:26. As set forth above, each requires an element that the other does not. Conspiracy requires proof of an agreement and specific intent. See *Hampton, Barton, Valrie, Richard* and *Guillory*, Supra. In contrast, a conviction for armed robbery does not require either of those elements. See *Collins, Bowers, Magee, Tolliver, Gordon, Hebert, Payne* and *Taylor*, Supra. Moreover, a conviction for armed robbery requires proof of several facts not essential to a conviction for conspiracy to commit armed robbery. For example, a conviction for armed robbery requires that an armed robbery actually take place, whereas liability for conspiracy to commit armed robbery may attach without there ever being an

armed robbery. See *State v. Knowles*, 392 So.2d 651, 654-655 (La. 1980) (explaining the difference between conspiracy to murder and being a principal to murder because "conspiracy does not depend on actual commission of the crime...."). Therefore, Louisiana state courts and federal courts have properly rejected similar double jeopardy arguments. *Hampton*, 865 So.2d at 292, *State v. Guillory*, 540 So.2d 1212, 1218 (La.App. 3rd Cir. 1989); *State v. Powers*, 344 So.2d 1049, 1050 (La. 1977); *Rossetti v. Curran*, 80 F.3d 1, 4 (1st Cir. 1996); *Ordonez v. Tafoya*, 15 Fed.Appx. 669, 670 (10th Cir. 2001); *Hilliard v. Kaiser*, 131 F.3d 151 (10th Cir. 1997); *Parker v. Bell*, 2001 WL 34684723, * 2 (E.D.N.C. 2001); *Brown v. Virgin Islands*, 1998 WL 959655, *5 (D.V.I. 1998); *United States v. Torres*, 77 F.3d 493 (10th Cir. 1996); *Wright v. United States*, 57 F.3d 1073 (7th Cir. 1995); *Brinkley v. United States*, 560 F.2d 871, 874 (8th Cir. 1977); *Boone v. United States*, 29 F.Supp.2d 281 (E.D.Va. 1998); *Virella v. United States*, 750 F.Supp. 111, 116 (S.D.N.Y. 1990). See also *United States v. Nichols*, 741 F.2d 767, 773 (5th Cir. 1984); *United States v. Sanchez*, 57 Fed.Appx. 210 (5th Cir. 2002); *Payan*, 992 F.3d at 1387; *United States v. Bradley*, 421 F.2d 924, 927-928 (6th Cir. 1970). Indeed, the United States Supreme Court has unequivocally held that "a substantive crime and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes." *United States v. Felix,* 503 U.S. 378, 389, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); See also *Iannelli*, 420 U.S. at 777, 95 S.Ct. 1289-1290. This is so because the "essence" of a conspiracy charge is the agreement, and not the criminal act itself. *Felix,* 503 U.S. at

388-390; *Iannelli*, 420 U.S. at 777.  In light of the above, under governing Supreme Court precedent, armed robbery and conspiracy to commit armed robbery are separate offenses for Fifth Amendment double jeopardy purposes.  Badeaux has not received multiple punishments for the same offense.  Badeaux's double jeopardy claim is therefore without merit.

### 3.  Fair and Impartial Tribunal

Petitioner contends that he was denied a fair and impartial trial because the state court trial judge, Judge Donald W. Hebert, failed to recuse himself after becoming a "material witness" in the case because the judge accepted plea agreements from petitioner's co-defendant's, Gallow and Thomas, who later testified against petitioner at his trial, and because the judge is allegedly a relative of the defendant in "the third or fourth degree."

It is well settled that under the Due Process clause of the Constitution, the accused in any criminal trial is guaranteed the right to a fair and impartial tribunal.  *Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993); *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625 (1955); *Bracy v. Gramley*, 520 U.S. 899, 905, 117 S.Ct. 1793, 1797 (1997).  However, the Due Process clause establishes a constitutional floor, not a uniform standard.  *Gramley*, 520 U.S. at 904-905.  Accordingly, a trial judge's disqualification under a state statute or code of judicial conduct do not ordinarily implicate the constitution. *Id.; Fero v. Kerby*, 39 F.3d 1462, 1479-1480 (10th Cir. 1994); *Dyas v.*

*Lockhart*, 705 F.2d 993, 997 (8ᵗʰ Cir. 1983); *Nichols v. Scott*, 69 F.3d 1255, 1277 (5ᵗʰ Cir. 1995) citing *United States v. Couch*, 896 F.2d 78, 81 (5ᵗʰ Cir. 1990) (noting that the federal statutory disqualification standard is "more demanding than that required by the Due Process Clause...." Thus, conduct violative of the statute may not constitute a due process deficiency). To secure *habeas* relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality." *Bigby v. Dretke,* 402 F.3d 551, 559 (5ᵗʰ Cir. 2005) citing *Liteky v. United States*, 510 U.S. 540, 552, 114 S.Ct. 1147 (1994). There must be an appearance of impropriety which rises to the level of a fundamental defect resulting in a complete miscarriage of justice; absent that level of severity, *habeas* relief is not cognizable. *Couch*, 896 F.2d at 81. Bias is not lightly established because ordinarily courts "presume that public officials have properly discharged their official duties." *Bigby,* 402 F.3d at 558 citing *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1052 (5ᵗʰ Cir. 1997) and *Bracy,* 520 U.S. at 909. Thus, the United States Supreme Court has found that decision makers are constitutionally unacceptable only when the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; has been the target of personal abuse or criticism from the party before him; and when he has the dual role of investigating and adjudicating disputes and complaints. *Id*. (citations omitted); See also *Baran v. Port of Beaumont*, 57 F.3d 436, 444 (5ᵗʰ Cir. 1995).

Petitioner's claims of bias or prejudice are premised on Judge Hebert's alleged status as a "material witness" and his alleged familial relationship to petitioner. The record, however, does not support a factual or constitutional basis for either of these claims.

Petitioner apparently claims that because co-defendant Gallow testified before Judge Hebert at petitioner's trial pursuant to a plea agreement with the State and that he was thereafter sentenced by Judge Hebert, Judge Hebert became a "material witness" in his case. Petitioner's argument is factually unsupported and unavailing. Clearly, Judge Hebert was not a witness a petitioner's trial, much less a "material" witness at petitioner's trial. Moreover, Judge Hebert was not subpoenaed by any party to testify at the trial, and thus, it was not likely or even remotely possible that Judge Hebert would be called to testify at petitioner's trial as a potential witness. Rather, any alleged bias which Gallow may have had in testifying against petitioner was clearly exposed by the State on direct examination and by defense counsel during cross examination of Gallow. The terms of Gallow's plea agreement were fully presented to the jury for consideration. Thus, there was no need for any testimony by Judge Hebert or anyone else regarding Gallow's alleged bias. Moreover, the record is devoid of any adverse, biased or prejudicial rulings, actions or inactions by Judge Hebert against petitioner which could even remotely be related to the plea agreement between Gallow and the state, and is devoid of any indication that Judge Hebert in any way influenced Gallow's trial testimony for or against petitioner's

interests.  Thus, there is no evidence which could possibly give rise to an appearance of

impropriety.   In sum, there is nothing in the record which suggests any doubt concerning

Judge Hebert's impartiality, and no evidence whatsoever which supports petitioner's

conclusory claim that he was denied his right to an impartial tribunal by virtue of the fact

that Judge Hebert accepted a co-defendant's plea bargain and later sentenced the co-

defendant in accordance therewith.[8]  Badeaux has failed to present any genuine question

concerning Judge Hebert's impartiality, and he is therefore not entitled to relief on this

claim.

The same is true with respect to petitioner's claimed "familial relationship" with

Judge Hebert. Initially, the undersigned notes that Badeaux has presented evidence to this

court in support of this claim which was not submitted to the state court, namely,

petitioner submits records of his purported "family tree".  Thus, the instant claim is in a

stronger factual posture than that presented in the state court.   Nevertheless, even

considering the evidence submitted, petitioner's claim is meritless.   At best, the

documents submitted by petitioner demonstrate only that Judge Hebert may be

petitioner's eighth degree relative (fourth cousin)[9], an alleged relationship which is

---

[8]Indeed, the undersigned notes that is common practice within the judiciary to preside over all proceedings involving co-defendants, even co-defendants who testify against their accomplices before the presiding judge.

[9]The documents reveal that petitioner and Judge Hebert may share a common great, great, great grandfather, Onezime Badeaux, and that Badeaux married twice, the descendants of his first marriage including Judge Hebert and the descendants of his second marriage including petitioner.  Because the Judge and petitioner did not descend from one another (direct line relationship), they are collateral relations.  The number of degrees in the collateral line is determined by the sum of the generations that separate each descendant from their common ancestor.  See La.C.Civ.P. arts. 900 and 901; *State v. Daughtery*, 563 So.2d 1171, 1175 (La.App.1st Cir. 1990); 28 U.S.C. §455(d)(2); 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice &*

clearly too far removed to be of constitutional significance.[10]  The relationship would not

support recusal under either state or federal law.  See La.C.Cr.P. art 671(A)(2) (requiring

a fourth degree relation to a party for recusal); 28 U.S.C. §455(b)(5)(i) (requiring a third

degree relation to a party for recusal).  This alleged distant  relationship raises no question

concerning Judge Hebert's impartiality, and does not support any claim that there was an

appearance of impropriety, much less one that rises to the level of a fundamental

constitutional defect resulting in a complete miscarriage of justice.   Accordingly, *habeas*

relief is not warranted.

Finally, under the applicable standard of review, petitioner is entitled to no relief

on these claims.  In denying these claims, the state trial court distinguished a Louisiana

appellate court case cited by petitioner (*State v. Bennett*, 520 So.2d 1095 (La. App. 3rd

Cir. 1987)) on the basis that in that case, the judge was actually scheduled to testify at the

defendant's trial.   Further, the court found that Badeaux failed to explain the basis for his

belief that he and the trial judge were related.  Finally, the court found that Badeaux failed

to establish "any acts or omissions by the judge that showed impartiality or prejudice."

Based on review of the entire state court record and relevant decisions of the

United States Supreme Court, these findings are not contrary to, nor an unreasonable

---

*Procedure,* Jurisdiction 2d, § 3548 at 607 fn. 3; *Higganbotham v. Oklahoma,* 328 F.3d 638, 645 (10th Cir. 2003); *In re Hatcher,* 150 F.3d 631, 636 (7th Cir. 1998); www.dropby.com "The Organization and Degree of Familial Relationships in Hispanic Cultures"; www.geocities.com "Cousin Number Counter - Relationship Chart"; http://en.wikipedia.org "Cousin Chart."  In this case, the number of generations between petitioner and Onezime Badeaux (four), plus the number of generations between Judge Hebert and Onezime Badeaux (four), for a total of eight degrees.

[10]That apparently explains Judge Hebert's ruling on this claim, in which he notes petitioner's failure to explain how he contended that the two were related.  Judge Hebert was obviously unaware of the alleged common great, great, great grandfather.

application of, federal law as determined by the United States Supreme Court, nor do these findings constitute an unreasonable determination of the facts in light of the evidence presented. Petitioner has failed to cite any United States Supreme Court case which supports of either of his claims, and the undersigned's research has failed to discover any such precedent. Moreover, as the state court found, petitioner fails to demonstrate any act or omission by Judge Hebert establishing the claimed impartiality or prejudice. Thus, under the applicable standard of review, petitioner is not entitled to relief on either claim.

**4. Ineffective Assistance of Trial Counsel**

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. The court's scrutiny is "highly deferential" and the court must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689-90. See also *Marler v. Blackburn*, 777 F.2d 1007, 1010 (5th Cir. 1985).

*Strickland's* prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[11] A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) citing *Strickland*, 104 S.Ct. at 2068. A petitioner must affirmatively prove prejudice. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th Cir. 1998). Self-serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland's* prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance."

---

[11]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
>An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).
>
>Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.
>
>When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra*, at pages 691-692.

*Strickland,* 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green,* 160 F.3d at 1043.

Petitioner contends that he was denied the effective assistance of counsel because counsel failed to move to recuse the trial judge and failed to move to recuse himself due to a conflict of interest because he allegedly represented the bank which petitioner was accused of robbing. These claims are discussed below.

On application for state post-conviction relief, in denying petitioner's first claim of ineffective assistance of counsel, that is, that the trial judge should have recused himself, the trial court found that in light of its rejection of petitioner's judicial recusal claims as meritless, petitioner failed to meet his burden of proving ineffective assistance under the *Strickland* standard. With regard to petitioner's second claim, that counsel failed to recuse himself, the trial court found "no indication that Frank Olivier, counsel for the defendant, ever represented Bank One. The only information available to the court was a copy of a page from the Louisiana Legal Directory which indicated that Mr. Olivier is an "approved attorney" for Bank One. There is no evidence in the record that

counsel did in fact represent Bank One. As such, this court has no evidence before it relating to any conflict that may have existed."

For the following reasons, the undersigned does not find the above analysis contrary to, or an unreasonable application of, federal law, nor an unreasonable determination of the facts based on the record of the state court proceeding.

Clearly, as shown above, there were no grounds requiring Judge Hebert to recuse himself. Accordingly, there was no factual or legal basis on which petitioner's counsel could have sought the Judge's recusal. Failure to make a futile motion or objection does not cause counsel's performance to fall below an objective level of reasonableness. See *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) citing *Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness...."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) citing *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Badeaux has failed to establish the first prong of *Strickland*. Moreover, because any recusal motion would have been futile, petitioner cannot demonstrate that his counsel's failure to move for Judge Hebert's recusal caused him any prejudice. Accordingly, Badeaux has failed to establish the second prong of *Strickland*. *Habeas* relief is therefore not warranted on this claim.

Petitioner's second claim fares no better. Badeaux argues that his counsel, Mr. Olivier, represented "conflicting interests" by his representation of petitioner and alleged prior representation of Bank One, the bank which petitioner was accused of robbing. In support of his claim, petitioner submits various pages from the Louisiana Legal Directory.

If an objection on grounds of conflict is lodged after trial, "the possibility of conflict is insufficient to impugn a criminal conviction. In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980). Thus*, Cuyler* only affords a defendant relief upon a showing that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718. Accordingly, there must be proof that (1) counsel actively represented conflicting interests and (2) an actual conflict of interest adversely affected his performance. *Blankenship v. Johnson*, 118 F.3d 312, 318 (5ᵗʰ Cir. 1997) citing *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718, *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir.1995) (en banc), cert. denied, 517 U.S. 1157, 116 S.Ct. 1547, 134 L.Ed.2d 650 (1996). "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim...." *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719. The "possibility of conflict is insufficient to impugn a criminal conviction." *Id.*

As the state trial court found, the copies of various pages of the Louisiana Legal Directory petitioner submitted to this court and to the state court in support of his claim do not establish that Mr. Olivier ever in fact actively represented Bank One. Rather, the Directory pages indicate merely that Mr. Olivier's law firm is "approved" to represent the bank. Moreover, the Directory pages submitted by petitioner do not even list Bank One is a "representative client" of the firm or that the firm is "local counsel" for the Bank. Accordingly, the undersigned cannot find that Mr. Olivier did in fact represent Bank One, or consequently, that Mr. Olivier ever actively represented "conflicting interests" as petitioner claims. There is simply no evidence before this court, nor was there any evidence presented to the state court, which supports petitioner's allegations.

For these reasons, the record herein fails to demonstrate that petitioner's counsel was deficient in any respect. Thus, his claim fails under the *Strickland* standard applicable to ineffective assistance of counsel claims. Moreover, petitioner's claim fails under the *Cuyle*r standard set forth above.[12] There is no evidence of any conflicting or collusive relationship between defense counsel and Bank One. To the contrary, the record demonstrates that defense counsel skillfully and zealously represented petitioner. There is no evidence that any actual conflict of interest was present, or that petitioner's counsel actively represented any such non-existent conflicting interest. The instant claim

---

[12]Under Fifth Circuit jurisprudence, the *Cuyler* standard has been limited to conflict claims involving representation of multiple criminal defendants. See *Beets v. Scott,* 65 F.3d 1258, 1266 (5th Cir.1995) (adopting *Strickland* for conflicts that do not involve multiple clients). However, to the extent that petitioner argues that the *Cuyler* may be applicable to petitioner's claim, the undersigned has briefly addressed the claim under that standard.

rests solely on petitioner's self-serving conclusory allegations. Such unsupported speculation is insufficient to set forth a Constitutional claim. *Cuyler*, 100 S.Ct. at 1719; See also *Green,* 160 F.3d at 1043. Accordingly, petitioner's claim is without merit.

## 5. Cumulative Effect

Finally, petitioner contends that the cumulative effect of all of the above alleged errors in his trial denied him due process, meriting federal *habeas* relief. The Fifth Circuit has recognized the "cumulative error doctrine" which provides that "an aggregation of non-reversible errors (i.e. plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial." *United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) citing *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir.1998). However, in light of the above analysis, petitioner has failed to establish *any* error of constitutional significance in the conduct of his state trial. Petitioner's trial was by no means fundamentally unfair. Therefore, relief is not available under the cumulative error doctrine. *See Williams,* 264 F.3d at 572 (no cumulative error where defendant failed to identify single error in jury selection); *Miller v. Johnson,* 200 F.3d 274, 286 (5th Cir. 2000) (petitioner who failed to demonstrate any error by trial counsel could not establish cumulative error); *Beall v. Cockrell*, 174 F.Supp.2d 512, 524 (N.D.Tex. 2001) (federal *habeas* relief unwarranted when petitioner failed to demonstrate any error in his state trial); *Brigham v. Cockrell*, 2002 WL 1776933 (N.D.Tex. 2002) (same); *Campbell v. Dretke*, 2005 WL 2372047, *19 (S.D.Tex. 2005) (same).

## CONCLUSION

For the foregoing reasons, petitioner's claims will be **DENIED** and **DISMISSED WITH PREJUDICE**.

Signed at Lafayette, Louisiana on December 21, 2005.

_C. Michael Hill_
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE